IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| *In re: University of the Arts WARN Act Litigation* | Civil Action No. 2:24-cv-02420 |

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Stephanie Cawley, Charis Duke, Nick Embree, Laura Frazure, Colin Kenney, Jacqueline Manni, Kevin Mercer, Rebecca Jean Murphy, Bradley Philbert, Karl Staven, Richard Rein, Rosemary Savoia, Brad M. Schutts, Daniel O. Tucker, Mikhail Sergeev, Laura Grutzeck, Carolina Blatt, Beth Couture, Jeanette L. Padilioni, Elisa M. Seeherman and Jenny L. Neff ("Plaintiffs"), on behalf of themselves and on behalf of all others similarly situated ("Similarly Situated Employees"), hereby bring this Complaint against The University of the Arts ("Defendant"). Plaintiffs bring this suit by and through their undersigned legal counsel. They allege as follows:

**NATURE OF THE ACTION**

1. This is a class action on behalf of Plaintiffs and Similarly Situated Employees to recover damages equaling sixty (60) days' pay and ERISA benefits due for violations of the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act"), 29 U.S.C. §§ 2101-2109 *et seq.*, for violations of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1-260.12, *et seq.*, and for common law breach of contract, unjust enrichment, and negligent misrepresentation.

2. Dating back to 1876, the University "was formed by the merging of two century-old institutions: Philadelphia College of Art and Philadelphia College of the Performing Arts. After being granted university status in 1987, the University of the Arts became the largest institution of

its kind in the nation, offering programs in design, fine arts, media arts, crafts, music, dance, theater and writing."[1]

3. Plaintiffs and Similarly Situated Employees were employed by Defendant until they discovered on or about May 31, 2024, via public reporting that Defendant had decided to close its doors and cease operations, and that they would be terminated as of June 7, 2024.

4. On June 7, 2024, Defendant laid off 704 employees, including 484 faculty members and staff represented by the United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608. Defendant retained approximately 100 employees after June 7, 2024, to assist in winding down the University's operations (the "winddown team"). The majority of these employees were terminated effective June 30, 2024.

5. There is no precedent for a nonprofit college closing so abruptly. "Robert Kelchen, a professor in educational leadership and policy studies at the University of Tennessee-Knoxville, said he wasn't aware of any other nonprofit college closing with such short notice, though he knew of cases in which for-profits abruptly shuttered. 'Typically, it's weeks if not months,' he said. 'It's just rare to see one handled like this.'"[2] Similarly, Helen Drinan, president of Cabrini University, which will officially close — after having given students, faculty, and alumni a year's notice — "said she wasn't aware of any other college that gave such a short window of notice as University of the Arts did."[3] Drinan said she could not understand how the University could only give a week's notice. "You should never ever find out in seven days you have to close," she said. "I just can't imagine a scenario in which that is defensible."[4]

---

[1] *See* https://www.uarts.edu/about (last visited June 26, 2024).
[2] Kristen A. Graham, *et al.*, "It would have taken $40M to save University of the Arts, a trustee says, as students protest the unprecedented closure," *The Philadelphia Inquirer* (June 3, 2024).
[3] *Id.*
[4] *Id.*

2

6. Defendant did not give Plaintiffs and Similarly Situated Employees at least sixty (60) days' advance written notice of termination, in violation of the WARN Act. Accordingly, Plaintiffs and Similarly Situated Employees are entitled to recover a judgment equal to their wages and ERISA benefits for sixty (60) days.

7. Plaintiffs further seek unpaid wages and liquidated damages under the WPCL.

8. Plaintiffs who signed contracts with Defendant entitling Plaintiffs to a specific monetary sum seek compensatory damages for breach of contract.

9. Plaintiffs who performed work for Defendant after June 7, 2024, seek compensation for breach of contract, unjust enrichment, and negligent misrepresentation.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the WARN Act claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5), and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

11. Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 2104.

## PARTIES

12. Defendant The University of the Arts is a private arts university that, at all relevant times, employed approximately 800 employees. Defendant is a registered Pennsylvania corporation. Defendant's facilities include six academic buildings along or near South Broad Street, Philadelphia, along with various other residence halls and administrative buildings. Defendant's primary address is 320 South Broad Street, Philadelphia, PA 19102.

13. Defendant provided undergraduate and graduate-level arts instruction to approximately 1,300 students, who engaged in academic coursework in dance, music management, musical theater, illustration, animation, interactive technology, music performance, acting, graphic

design, directing, theatrical production, and more. According to its website, Defendant's mission was "to advance human creativity."

14.     Plaintiff Stephanie Cawley was employed by Defendant as an Adjunct Professor. Plaintiff's employment terminated on June 7, 2024. She is a member of United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608.

15.     Plaintiff Charis Duke was employed by Defendant as an Adjunct Professor and Coach/Accompanist. Plaintiff's employment terminated on June 7, 2024. She is a member of United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608.

16.     Plaintiff Nick Embree was employed by Defendant as an Associate Professor. Plaintiff's employment terminated on June 7, 2024. He is a member of United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608.

17.     Plaintiff Laura Frazure was employed by Defendant as an Assistant Professor. Plaintiff's employment terminated on June 7, 2024. She is a member of United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608.

18.     Plaintiff Colin Kenney is employed by Defendant as an IT Specialist. Plaintiff was notified that his employment would be terminated on June 7, 2024. However, on June 7, 2024, Plaintiff was retained on a temporary basis and his employment was terminated on July 16, 2024. He is a member of United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608.

19.     Plaintiff Jacqueline Manni is employed by Defendant as an Assistant Registrar for Student Enrollment and Communications. Plaintiff was notified that her employment terminated would be terminated on June 7, 2024. However, on June 7, 2024, Plaintiff was retained on a temporary basis. Plaintiff's employment was terminated on July 28, 2024. She is a member of United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608.

20. Plaintiff Kevin Mercer was employed by Defendant as an Associate Professor. Plaintiff's employment terminated on June 7, 2024. He is a member of United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608.

21. Plaintiff Rebecca Jean Murphy was employed by Defendant as a Manager for Annual Fund & Leadership Giving. Plaintiff's employment terminated on June 7, 2024. She is a member of United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608.

22. Plaintiff Bradley Philbert was employed by Defendant as Adjunct Professor. Plaintiff's employment terminated on June 7, 2024. He is Vice President and a member of United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608.

23. Plaintiff Karl Staven was employed by Defendant as an Associate Professor and Program Coordinator. Plaintiff's employment terminated on June 7, 2024.

24. Plaintiff Richard Rein was employed by Defendant as an Adjunct Professor. Plaintiff's employment terminated on June 7, 2024. He is a member of United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608.

25. Plaintiff Rosemary Savoia is employed by Defendant as a Business Analyst. Plaintiff was notified that her employment would be terminated on June 7, 2024. However, on June 7, 2024, Plaintiff was retained on a temporary basis and her employment may be terminated at any time. She is a member of United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608.

26. Plaintiff Brad M. Schutts, a citizen and resident of New Jersey, was employed by Defendant as Interim Director of Student Financial Services (previously Director of Operations, Student Financial Services). Plaintiff's employment terminated on June 7, 2024.

27. Plaintiff Laura Grutzeck, a citizen and resident of Pennsylvania, was employed by Defendant as a Special Archival and Digital Collections Librarian. Plaintiff's employment terminated on June 7, 2024.

28. Plaintiff Carolina Blatt, a citizen and resident of Pennsylvania, was employed by Defendant as a Program Director and Professor. Plaintiff Blatt was retained to work on the winddown team until July 3, 2024, when her employment was terminated.

29. Plaintiff Jenny L. Neff, a citizen and resident of Pennsylvania, was employed by Defendant as a Professor and Program Director of Music Education. Plaintiff Neff was retained to work on the winddown team until July 3, 2024, when her employment was terminated.

30. Plaintiff Daniel O. Tucker, a citizen and resident of Pennsylvania, was employed by Defendant as an Associate Professor and Graduate Program Director of Masters in Museum Studies. Plaintiff Tucker was retained to work on the winddown team until July 3, 2024, when his employment was terminated.

31. Plaintiff Mikhail Sergeev, a citizen and resident of Pennsylvania, was employed by Defendant as an Adjunct Professor, who was scheduled to teach a class during the University's summer session. Plaintiff's employment terminated on June 7, 2024.

32. Plaintiff Beth Couture, a citizen and resident of North Carolina, was employed by Defendant as a Director of Counseling. Plaintiff's employment terminated on June 7, 2024.

33. Plaintiff Jeanette L. Padilioni, a citizen and resident of Pennsylvania, was employed by Defendant as a Student Activities Programming Coordinator. Plaintiff Padilioni was retained to work on the winddown team until August 5, 2024, when her employment was terminated.

34. Plaintiff Elisa M. Seeherman, a citizen and resident of Pennsylvania, was employed by Defendant as the Director of Career Services. Plaintiff's employment terminated on June 7, 2024.

35. Similarly Situated Employees were employed by Defendant until their termination via mass layoff and/or plant closure without cause on or about June 7 or July 3, 2024.

## STATEMENT OF FACTS

36. Many faculty and staff employed by Defendant are represented by United Academics of Philadelphia, AFT-PA, AFL-CIO, Local 9608 (the "Union"). The Union represents two bargaining units, one comprised of faculty and the other comprised of staff.

37. The faculty bargaining unit ratified its first contract in February 2024 on behalf of approximately 380 members.

38. The staff bargaining unit voted to join the Union in May 2022 and was in the process of negotiating its first contract when Defendant announced its closure. The staff bargaining unit is comprised of approximately 120 members.

39. On May 29, 2024, Defendant notified its accrediting body, the Middle States Commission on Higher Education (the "MSCHE"), that it would imminently close. The MSCHE subsequently withdrew its accreditation from Defendant effective June 1, 2024, by issuing a Notice of Adverse Action ("NOAA"). The NOAA stated that "the institution failed to inform the Commission of closure in a timely manner or to properly plan for closure with prior approval through substantive change[,]" and that "the institution has failed to ensure all communication with constituents, regulatory agencies, and the Commission compl[ied]" with its Accreditation Process Policy and Procedures. (A true and correct copy of the Notice of Adverse Action is attached hereto as Exhibit A).

40. On May 31, 2024, the Chair of Defendant's Board of Trustee's, Judson Aaron, and Defendant's President, Kerry Walk, issued a joint statement announcing that Defendant would "close as of Friday June 7, 2024." (A true and correct copy of the joint statement is attached hereto as Exhibit B).

41. Upon information and belief, Defendant terminated Plaintiffs' employment along with the employment of nearly all of Defendant's other employees ("Similarly Situated Employees"). These terminations constitute a mass layoff and/or plant closing as defined by the WARN Act for which employees were entitled to receive 60 (sixty) days advance written notice that should have been delivered to the workers (and others required by law) on or around the week of April 8, 2024.

42. Upon information and belief Defendant did not provide notice to Plaintiffs and those similarly situated prior to May 31, 2024.

43. Defendant's discharge of Plaintiffs and those similarly situated was without cause.

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this action on their own behalf and, pursuant to the Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of Similarly Situated Employees who worked for the Defendant and who are owed damages due to violations of the WARN Act and the WPCL, as well as based on common law breach of contract, unjust enrichment, and negligent misrepresentation.

45. Plaintiffs seek to represent three classes:

   a. All former employees of Defendant who were terminated as part of—or as the reasonably foreseeable result of—the mass layoff and/or plant closing ordered by Defendant on or about June 7 or 30, 2024, and were harmed thereby (the "WARN Class").

8

b. All former employees of Defendant who performed work for Defendant after June 7, 2024, which was substantially different from the work such employees or former employees had been hired by Defendant to perform (the "Winddown Class").

c. All employees or former employees of Defendant who had contracts with Defendant entitling such former employees to fixed sums of compensation and/or a fixed term of employment (the "Contract Class").

46. Upon information and belief, Defendant terminated the employment of more than 100 Similarly Situated Employees along with terminating Plaintiffs' employment.

47. Defendant was required by the WARN Act to give Plaintiffs and those similarly situated members of the WARN Class at least sixty (60) days' advance written notice prior to their terminations.

48. Upon information and belief, prior to their terminations, Defendant did not provide written notice in compliance with the requirements of the WARN Act to Plaintiffs or to similarly situated members of the WARN Class.

49. Upon information and belief, Defendant has failed to pay Plaintiffs and those similarly situated members of the WARN Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) days following their respective terminations, and failed to make retirement contributions and provide them with health insurance coverage and other employee benefits.

50. Certain Plaintiffs, including Rebecca Sack and Micah Jones, and similarly situated members of the Contract Class executed written contracts with Defendant entitling those Plaintiffs and similarly situated members of the Contract Class to compensation over a specific term of years. The term of years had not expired at the time of their respective terminations. Their written contracts also obligated Defendant to pay a specific sum of money to the members of the Contract Class. These employment contracts also specified the job duties and responsibilities of the members of the Contract

Class Plaintiffs and Similarly Situated members of the Contract Class would provide to Defendant. *See* Exhibit C.

    a. Plaintiffs, including Rebecca Sack and Micah Jones, and similarly situated members of the Contract Class executed contracts with Defendant to perform work in excess of their regular job duties in exchange for monetary stipends. The contracts state no basis on which Defendant may void them.

    b. Plaintiffs, including Rebecca Sack and Micah Jones, and similarly situated members of the Contract Class executed employment contracts. These employment contracts were not "at will." Rather, those contracts state the term of years during which they would be in effect, the circumstances in which Defendant may void them, and the procedures required to void them.

51. Certain Plaintiffs, including Jenny Neff, Daniel Tucker, and Carolina Blatt, and similarly situated members of the Winddown Class performed work for Defendant after June 7, 2024 (the "Winddown Work"). The Winddown Work, which was fundamentally different in nature from the regular job duties and responsibilities that Plaintiffs Neff, Tucker and Blatt and similarly situated members of the Winddown Class had been hired and contracted to perform for Defendant.

    a. Defendant caused Plaintiffs Neff, Tucker and Blatt and similarly situated members of the Winddown Class, who performed Winddown Work after June 7, 2024, to believe they would be compensated separately and in addition to their regular salaries.

    b. Plaintiffs Neff, Tucker and Blatt and similarly situated members of the Winddown Class would not have performed the Winddown Work for Defendant after June 7, 2024, but for their expectation of receiving additional compensation for such work.

52. **Numerosity.** There are more than 700 members of the Classes identified above ("Class Members"), and therefore, joinder of all members of the respective Classes is impracticable.

53. **Typicality.** Each Plaintiffs' claims are typical of the claims of the members of the WARN Class.

54. Plaintiffs' Neff, Tucker and Blatt's claims are typical of the claims of the members of the Winddown Class.

55. Plaintiffs' Neff, Tucker and Blatt's claims are typical of the claims of the members of the Contract Class.

56. **Commonality**. Questions of fact and law are common to the members of the Classes, and these predominate over any such questions affecting only individual members.

57. Plaintiffs will fairly and adequately protect the interests of the respective Classes.

58. Plaintiffs have retained counsel competent and experienced in complex employment litigation. The firms chosen focus on labor and employment law, fully staffed with multiple experienced partners, associates, and paralegal and administrative support. The firms have represented many major figures (persons, companies, entities, and classes) in the area of labor and employment for many years in Pennsylvania, New Jersey, New York, California and elsewhere.

59. In this instance, proceeding via class action is superior to other available methods to fairly and efficiently adjudicate this controversy. For WARN Act and related litigation, most individual Plaintiffs / members of the Classes may lack the money or the other necessary resources to thoroughly and timely prosecute a lawsuit in federal court against a large private institution. This is certainly the case here.

60. Questions of law and fact are indeed common to the members of the Classes here, and these predominate over any questions solely affecting individual members of the Classes. These include, but are not limited to:

(a) Whether the Class Members were employees of Defendant who worked at or reported to any covered facility/location;

(b) Whether Defendant was an "employer" as defined by the WARN Act;

(c) Whether Defendant, as an employer, terminated the employment of the members of the Classes without cause on their part and without giving them 60 (sixty) days of advance written notice;

(d) Whether Defendant's failure to provide 60 (sixty) days' notice should render it liable to the Class Members for 60 (sixty) days' pay and benefits;

(e) Whether Defendant may rely on the WARN Acts "unforeseeable business circumstances" defense, the "faltering company" defense, or some other defense;

(f) Whether Defendant may be entitled to any reduction in its liability for exercising "good faith" in its conduct of these terminations and failure to give proper notice;

(g) Whether the defense of impossibility excuses Defendant's contractual obligations to Class Members.

## CAUSES OF ACTION
### COUNT I
### Violation of the WARN Act, 29 U.S.C. §§ 2101, *et. seq*.

61. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

62. At all relevant times, Defendant employed 100 or more employees (exclusive of part-time workers). Alternatively, it employed 100 or more employees that (in the aggregate) worked 4,000 or more hours per week, exclusive of hours of overtime within the United States as defined by the WARN Act.

63. Defendant, as a single employer, ordered the "mass layoff" and/or "plant closing" of one or more of its facilities as those terms are defined by 29 U.S.C. § 2101(a).

64. Plaintiffs and the members of the WARN Class who were terminated by Defendant as a result of Defendant's ordering the mass layoff and/or plant closing on or about June 7, 2024, were "affected employees" as defined by 29 U.S.C. § 2101(a)(5) of the WARN Act.

65. Plaintiffs and the members of the WARN Class are "aggrieved employees" of the Defendant as that term is defined by 29 U.S.C. § 2104(a)(7).

66. The mass layoff and/or plant closing at Defendant's facilities resulted in "employment losses," as that term is defined by the WARN Act for at least fifty (50) of Defendants' employees, as well as 33% of Defendant's workforce at its facilities, excluding "part-time employees," as that term is defined by the WARN Act. 29 U.S.C. § 2101.

67. Pursuant to Section 2102 of WARN and 20 C.F.R. §§ 639.1 - 639.10 *et. seq.*, Defendant was required to provide to employees at least sixty (60) days prior written notice of the termination or, in certain narrow circumstances, notice as soon as practicable.

68. Defendant failed to provide at least sixty (60) days' prior notice before terminating the members of the WARN Class, and it failed to provide a notice or notices setting forth the basis for this reduced notice, as required by the WARN Act.

69. Defendant failed to pay Plaintiffs and each of the members of the WARN Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) working days following their respective terminations, and failed to make retirement benefit contributions, provide other employee benefits under ERISA, and pay their medical expenses for sixty (60) calendar days from and after the dates of their respective terminations.

70. As a result of Defendant's failure to pay the wages, benefits and other monies as asserted above, the members of the WARN Class were damaged in an amount equal to the sum of the members of the WARN Class unpaid wages, PTO, accrued holiday pay, accrued vacation pay,

accrued sick leave pay and benefits that would have been paid for a period of sixty (60) calendar days after the date of their terminations.

## COUNT II
## Violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1-260.12

71.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72.     Plaintiffs and the members of the Classes were employees covered by the WPCL. 43 P.S. § 260.9(a).

73.     Defendant is an employer covered by the WPCL. 43 P.S. § 260.2a.

74.     The WPCL requires that an employer pay all wages due to its employees. 43 P.S. § 260.3.

75.     Wages are defined under the WPCL as "[i]ncluding all earnings of an employee," and includes "fringe benefits or wage supplements whether payable by the employer from his funds or from amounts withheld from the employes' pay by the employer." 43 P.S. § 260.2a.

76.     The WPCL requires an employer to pay terminated employees any outstanding wages or compensation "no later than the next regular payday of his employer on which such wages would otherwise be due[.]" 43 P.S. § 260.5(a).

77.     Defendant has intentionally failed to pay wages due to employees.

78.     Pursuant to 43 P.S. §§ 260.9 and 260.10, a Defendant who intentionally fails to pay an employee wages in conformance with the WPCL shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages.

79.     Defendant does not have written authorization from Plaintiffs or the members of the Classes to withhold, divert, or deduct any portion of their wages that concern this action.

14

## COUNT III
## Common Law Breach of Contract

80. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

81. Plaintiffs Sack and Jones, and the members of the Contract Class entered into contracts with Defendants, and each party's acceptance was supported by good and valuable consideration.

82. Plaintiffs and the members of the Contract Class agreed to provide labor or other services beyond their ordinary job descriptions. Defendant agreed in writing to pay a fixed sum of money to each Plaintiff and the members of the Contract Class.

83. Defendant breached its contractual obligations by refusing to pay Plaintiffs and Class Members the full sum of money that was promised.

84. Plaintiffs and the members of the Contract Class agreed to provide labor or other services within the scope of their job descriptions for a fixed term of years. The terms of the agreements provided they could only be voided in specific circumstances and through the use of specific procedures.

85. Defendant breached its contractual obligations by terminating Plaintiffs and the members of the Contract Class's employment where required circumstances were not present and without using the procedures specified in the agreements.

86. Because Defendant breached the contract, Plaintiffs and the members of the Contract Class suffered losses.

87. Plaintiffs and the members of the Contract Class are entitled to monetary damages sufficient to place them in the financial position they would have been in but for Defendant's breach.

## COUNT IV
## Unjust Enrichment

88. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

89. Defendant received and benefited from the uncompensated labor of Plaintiffs and the members of the Winddown Class after June 7, 2024, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

90. Defendant did not properly compensate Plaintiffs and the members of the Winddown Class for this labor.

91. By reason of having secured the work and efforts of Plaintiffs and the members of the Winddown Class without proper compensation, Defendant enjoyed reduced labor costs and therefore realized additional earnings to their benefit and to the detriment of Plaintiffs and the members of the Winddown Class. Defendant retained and continues to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

92. Accordingly, Plaintiffs and the members of the Winddown Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendant.

## COUNT V
## Negligent Misrepresentation

93. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

94. Defendant represented to Plaintiffs and the members of the Winddown Class that, in exchange for labor performed after June 7, 2024, that was different from the work they had initially been hired to perform, Plaintiffs and the members of the Winddown Class would receive additional financial compensation.

16

95. Defendant knew or should have known that Plaintiffs and the members of the Winddown Class would not receive additional financial compensation.

96. Defendant made these representations with the intention of inducing Plaintiffs and the members of the Winddown Class to perform labor for Defendant.

97. Plaintiffs and the members of the Winddown Class justifiably relied on Defendant's representations.

98. Plaintiffs and the members of the Winddown Class were injured.

99. Accordingly, Plaintiffs and the members of the Winddown Class are entitled to judgment in an amount equal to the value of their labor.

## JURY DEMAND AND PRAYER FOR RELIEF

100. On behalf of themselves, and a class of Similarly Situated Employees, Plaintiffs demand a trial by jury in this case.

**WHEREFORE,** Plaintiffs and Class Members demand judgment against the Defendant as follows:

(a) Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, 29 U.S.C §2104(a)(5), Plaintiffs and the Class Members constitute a single class;

(b) An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and retirement contributions and other ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act;

(c) Unpaid wages, liquidated damages, and attorneys' fees as provided in the WPCL;

(d) An amount equal to the sum of accrued but unpaid vacation as of the termination date of Plaintiffs and the Class Members;

(e) Interest as allowed by law on the amounts owed per the preceding paragraphs;

(f) Compensatory damages for Defendant's breach of contract;

(g) Disgorgement of funds equal to the value of the work performed by Plaintiffs and Class Members after June 7, 2024, under a theory of unjust enrichment;

(h) Compensatory damages for Defendant's negligent misrepresentation;

(i) Appointment of Plaintiffs as the Class Representative and payment of reasonable compensation for his services as such;

(j) Appointment of the undersigned attorneys as Class Counsel;

(k) The reasonable attorneys' fees and the costs and disbursements the Plaintiffs incur in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. §2104(a)(6); and

(l) Such other and further relief as this Court may deem just and proper.

Dated: September 17, 2024    */s/ Samuel H. Datlof*
**WILLIG, WILLIAMS & DAVIDSON**
Ryan Allen Hancock, Esq. (PA No. 92590)
Jordan R. Konell, Esq. (PA No. 332529)
Samuel H. Datlof, Esq. (PA No. 324716)
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Phone: (215)-656-3600
rhancock@wwdlaw.com
jkonell@wwdlaw.com
sdatlof@wwdlaw.com

**EDELSON LECHTZIN LLP**
Eric Lechtzin (PA No. 62096)
Marc H. Edelson (PA No. 51834)
Shoshana Savett (PA No. 91601)
411 S. State Street, Suite N-300
Newtown, PA 18940
Phone: (215)-867-2399
elechtzin@edelson-law.com
medelson@edelson-law.com
ssavett@edelson-law.com

*Interim Class Counsel*